UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WILLIAM CANDOW, an individual; GERI CANDOW, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID DUST, an individual; CLAYTON COATINGS, INC.; DOES I-X, inclusive and ROES I-X, inclusive, <br><br> Defendants. | 2:11-CV-00343-LRH-GWF <br><br> ORDER |

Before the Court is Defendant Clayton Coatings, Inc.'s ("Clayton") Motion for Summary Judgment. Doc. #93.[1] Plaintiffs William and Geri Candow ("Plaintiffs") filed a Response (Doc. #94) and Counter Motion for Partial Summary Judgment (Doc. #98), to which Clayton replied (Doc. #95). Clayton also filed a Response to Plaintiffs' Counter Motion for Partial Summary Judgment (Doc. #97), to which Plaintiffs replied (Doc. #99). Also before the Court is Clayton's Motion to Strike Plaintiffs' Counter Motion for Summary Judgment. Doc. #96. Plaintiffs filed a Response (Doc. #100), to which Clayton replied (Doc. #101).

**I.    Factual Background**

This action arises out of a passenger vehicle and motorcycle accident between Plaintiff William Candow ("Candow") and Defendant David Dust ("Dust") that occurred on October 27,

---

[1] Refers to the Court's docket number.

2008, in Las Vegas, Nevada. The undisputed material facts are as follows.[2] At the time of the incident, Dust was employed as a project manager for Clayton and was working on the Cosmopolitan Hotel and Casino construction project. Doc. #93, Ex. A, 13:2-6, 21-25. As a project manager, Dust's job duties included the following:

> all the associated paperwork, estimating for change orders. Pretty much anything to do with the project itself as far as manpower, materials, equipment. Pretty much ran the whole project. Anything that you can think of that had to be done for the fireproofing application of the building was something that was under my umbrella to do, from engineering to meeting with the city to go over thicknesses for the materials, to ordering materials, to hiring people, laying people off, so on, so forth.

*Id.* at 13:21-25, 14:1-6. As part of Dust's employment package with Clayton, he received $500 per week subsistence, which was standard for all Clayton project managers who traveled (*id.* at 16:9-17); he was provided a company cell phone, which was a standard flip phone without email or internet capabilities (*id.* at 16:18-21, 17:3-8); he was not provided a company vehicle, nor did Clayton provide insurance for his personal vehicle (*id.* at 17:21-23, 18:5-7); he drove his personal 2003 Mitsubishi Outlander, which was personally insured (*id.* at 18:1-4, 8-9); Clayton did not provide or reimburse Dust for mileage or other auto expenses when driving around Las Vegas for work-related purposes or otherwise (*id.* at 18:14-17, 18-21).

On October 27, 2008, Dust arrived at the Cosmopolitan worksite between 5 and 5:15 a.m. Doc. #93, Ex. A, 26:12-14. Sometime between 9:30 and 10 a.m., he left to take care of some paper work at the Clayton office, which was approximately 10-12 minutes away by vehicle. *Id.* at 27:2-14. Dust was at the Clayton office between 35 minutes and one hour. *Id.* at 27:17-18. Thereafter, he and a co-worker went to lunch at a Chipolte restaurant. *Id.* at 27:19-25. They drove separately. *Id.* at 28:6. When Dust was working on the Cosmopolitan project, he did not have a scheduled time for his lunch break, but he would typically take a one to one-and-one-half hour lunch break

---

[2] Plaintiffs specifically identify which of Clayton's undisputed facts they dispute for purposes of opposing summary judgment. *See* Doc. #94, pp. 15-16.

somewhere between 10 a.m. and 1 p.m. *Id.* at 20:9-22. Clayton never instructed Dust on how he was to spend his time during lunch breaks. *Id.* It was Dust's personal choice to eat at Chipotle and he was not instructed by Clayton to have lunch there. *Id.* at 31:10-16.

Dust estimates that they arrived at Chipotle between 11:10 and 11:15 a.m. and stayed for no longer than 20 minutes. *Id.* at 29:7-9. Between 11:00 a.m. and the time of the accident, Dust had three phone conversations with Clayton employees regarding the project. *See* Doc. #93, Ex. 1, 84:13-21, 85:9 (call at 11:02 a.m. with Clayton estimator "would have likely been project related"); *id.* at 85:10-25 (call at 11:17 a.m. with Clayton safety coordinator concerned "something safety related with the project"); *id.* at 88:5-18 (call at 11:36 a.m. with Clayton superintendent "would have been project related").[3]

After leaving Chipotle, Dust drove back to the "Pentagon" for a 12:00 p.m. superintendents meeting.[4] *Id.* at 29:21-25, 45:15-16. Prior to and at the time of the accident, Dust was making a personal call to his friend on his company cell phone using a hands-free, corded ear piece device. *Id.* at 37:12-20, 38:10-12, 88:22-23. As Dust was making a left hand turn into the parking lot, Candow crashed into the passenger side of Dust's vehicle on the rear quarter panel. *Id.* at 32:3-16. Dust received his friend's phone call at 11:49 a.m. and the call lasted 6 minutes. *Id.* at 51:1-14, Doc. #93, Ex. D. After the accident, Dust called another Clayton employee on his cell phone or at the office and informed him that he had been in an accident. Doc. #93, Ex. A, 41:4-16; Doc. #93, Ex. D.

///

---

[3] Clayton asserts that Dust took only one work-related phone call while he was at Chipotle. Doc. #93, p. 6, ¶17. However, the precise time frame in which Dust left the Clayton office, arrived at Chipotle, and left for his 12:00 p.m. meeting is not established by the evidence before the Court. Accordingly, the facts do not show that Dust received only one phone call during his lunch break.

[4] Perini Construction's office building was referred to as the "Pentagon." Doc. #93, Ex. A, 29:21-24, 30:13-17.

Plaintiffs commenced this action in the Eighth Judicial District, Clark County, State of Nevada on October 26, 2010. Doc. #1, ¶1. As against Clayton, Plaintiffs allege negligence, intentional infliction of emotional distress,[5] loss of consortium, vicarious liability, and negligent hiring. On November 27, 2012, the Court granted in part and denied in part Clayton's first Motion for Summary Judgment. Doc. #53. The Court granted summary judgment in favor of Clayton as to Plaintiffs' negligent hiring claim. *Id.* The Court denied summary judgment as to Plaintiffs' remaining claims, finding there were material issues of fact regarding whether Dust was within the course and scope of employment at the time of the accident. *Id.*

## II.     Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

---

[5] Plaintiffs' intentional infliction of emotional distress claims were dismissed on February 15, 2012. Doc. #38.

4

On an issue as to which the non-moving party has the burden of proof, however, the moving party can prevail merely by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case. *Celotex*, 477 U.S. at 323.

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

**III.    Discussion**

    **A.    Clayton's Motion to Strike**

The Court has reviewed the documents and pleadings on file in this matter and finds that Plaintiffs' Counter Motion for Partial Summary Judgment is untimely pursuant to Federal Rule of Civil Procedure 56(b) and the Court's November 12, 2013 Scheduling Order. *See* Fed. R. Civ. P. 56(b) ("Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."); Doc. #80 (ordering discovery due by February 14, 2013, and dispositive motions due March 17, 2014). Plaintiffs filed their Counter Motion for Partial Summary Judgment on March 31, 2014, as part of their Response to Clayton's Motion for Summary Judgment. *See* Doc. #98; Doc. #94. Accordingly, Plaintiffs' Counter Motion for Partial Summary Judgment shall be stricken as untimely. *See Igbinovia v. Catholic Healthcare West*, No. 2:07-cv-01170-GMN, 2011 WL 3424591, at *2 (D. Nev. Aug. 4, 2011) ("any dispositive motion filed after the deadline in the

1  scheduling order . . . can be denied solely on the ground that it was untimely") (citing *Johnson v.*
2  *Mammoth Recreations, Inc.*, 975 F.2d 604, 608-69 (9th Cir. 1992)).

3   Plaintiffs' argument that they were merely attempting to avoid redundant pleadings, given
4  that their Opposition and Counter Motion are identical, is unavailing.  Although Clayton and the
5  Court accepted Plaintiffs' opposition and counter motion in the same format in an earlier
6  instance—Doc. #41, dated March 29, 2012—that pleading did not run afoul of Federal Rule of
7  Civil Procedure 56(b) or any Court scheduling order.  Moreover, Plaintiffs did not seek a
8  modification of the discovery or dispositive motion deadline set by the Court or attempt to show
9  good cause for their failure to comply with the Court's Scheduling Order.  Accordingly, to the
10 extent Plaintiffs seek partial summary judgment on their claims against Clayton, their request is
11 denied.  The Court shall, however, consider Plaintiffs' pleading in its entirety insofar as it is a
12 Response to Clayton's Motion for Summary Judgment.

13 **B.     Clayton's Motion for Summary Judgment**

14   An employer is vicariously liable for the torts of its employee "when the employee is under
15 the control of the employer and when the act is within the scope of employment." *Molino v. Asher*,
16 618 P.2d 878, 879 (Nev. 1980).  "[W]hether an employee was acting within the scope of his or her
17 employment" is generally a question for the trier of fact.[6]  *Kornton v. Conrad, Inc.*, 67 P.3d 316,
18 317 (2003).  The scope-of-employment provision restricts employer liability to conduct that
19 "should be considered as one of the normal risks to be borne by the business."  Restatement
20 (Second) of Agency § 229 comment a (1958).  In this way, the provision aims at the causal

---

[6] Nevada case law adds an addendum to this rule: "[i]ssues of respondeat superior liability, however, may be resolved as a matter of law when evidence of an employee's status at the time of the incident is undisputed."  Of course, if the evidence is undisputed, then there is no "genuine dispute" with respect to this evidence, and summary judgment is appropriate (at least where the evidence establishes a material fact).  *See Liberty Lobby*, 477 U.S. at 248; *see also Kornton v. Conrad, Inc.*, 67 P.3d 316, 317 (Nev. 2003) (reciting the Nevada standard for summary judgment).  Thus, the legal standard for resolution of the scope-of-employment issue at summary judgment is the same with or without this addendum.  *See Molino*, 618 P.2d at 879; *Kornton*, 67 P.3d at 317.

connection between a business's activities and the harm caused. *See, e.g.*, W. Seavey, *Handbook of the Law of Agency* 148 (1964). And "questions of [ ] causation are generally issues of fact left to the trier of fact to resolve." *Desert Valley Construction v. Hurley*, 96 P.3d 739, 741 (Nev. 2004).

  Here, as in Clayton's first Motion for Summary Judgment, the only issue disputed is whether Dust was within the scope of his employment when he collided with Candow. For the same reasons identified by the Court in its November 27, 2012 Order denying summary judgment, the Court finds that summary judgment remains inappropriate. Clayton urges summary judgment on the basis of the "coming and going" rule, pursuant to which "[t]he tortious conduct of an employee in transit to or from the place of employment will not expose the employer to liability, unless there is a special errand which requires driving." *Molino v. Asher*, 96 Nev. 814, 618 P.2d 878, 879-80 (1980) (citing *Nat'l Convenience Stores, Inc. v. Fantauzzi*, 94 Nev. 655, 584 P.2d 689, 691 (1978)). Viewing the facts in the light most favorable to Plaintiffs, the Court maintains that a reasonable jury could find that Dust was acting within the scope of his employment at the time of the accident. Here, Dust was not merely commuting to work. Rather, he was in the middle of his work day—he had been attending to work-related matters just prior to stopping for lunch and he was on his way to a work-related meeting at the time of the accident. His employment obligations required him to make this trip by vehicle. Moreover, Dust did not have a scheduled lunch break or a break in his shift such that he was unequivocally on his own personal time when he stopped for lunch. In fact, he answered as many as three work-related calls in the time period that could be considered his lunch break. Accordingly, summary judgment is inappropriate under the "coming and going" rule.

  Clayton further argues that even if Dust was acting within the scope of employment, he "frolicked" by going to lunch and deviated from the scope of employment so as to relieve Clayton from liability. The Court disagrees. Where an employee commits a tort while on a "detour," in which he deviates from his employer's business in a way that is still related to his employment, he is considered to be in the scope of employment; however, if he engages in a "frolic," or the pursuit

7

of his own business unrelated to any business of his employer, his employer is not liable. *Pyne v. Witmer*, 129 Ill.2d 351, 543 N.E.2d 1304, 1309 (1989). Again, viewing the aforementioned facts in the light most favorable to Plaintiffs, the Court finds that a reasonable jury could find that Dust was merely on a detour, as opposed to a frolic, or that Dust had abandoned his frolic and reentered the scope of employment at the time of the accident. The fact that Dust went to lunch at a location two to five miles south of any business-related location he was required to visit that day is not determinative. Accordingly, summary judgment is inappropriate on this basis as well.

Finally, Clayton identifies several new facts, all of which are either irrelevant for purposes of respondeat superior or fail to establish that Dust was outside the scope of his employment when he collided with Candow. Specifically, the fact that Dust had lived in Las Vegas for over a year when the accident occurred and was supposedly familiar with the area in which he was driving on October 27, 2008, is irrelevant for purposes of respondeat superior.[7] Doc. #93, ¶4. Additionally, the fact that Dust did not have a scheduled meeting at the Clayton office is irrelevant—it is undisputed that he went there for work-related purposes, specifically a paperwork issue. *See* Doc. #93, Ex. A, 26:24-27:18. Finally, Clayton identifies the route that Dust took to get to the Clayton office in the morning (Doc. #93, ¶7), the route that he took to get from the Clayton office to the Chipotle (*id.*, ¶¶14, 15), and the route that he took to get from the Chipotle to the Pentagon (*id.*, ¶19). However, Clayton's assertion that "[i]n order to return to the Perini office from the Chipotle, Defendant Dust had to take a different route than he had been traveling from the Clayton office to the Perini office" is not supported by the evidence before the Court. *See id.*, ¶20. There is nothing in the record to indicate that Dust routinely took a different route from the Clayton office to the Pentagon. Nor does the fact that Dust may have taken a different route on the day in question than he otherwise would have taken had he driven directly from the Clayton office to the Pentagon

---

[7] In this regard, the Court agrees with Clayton's averment that "it is unclear how this fact would be relevant to a determination of whether Dust was within the course of his employment at the time of the accident." *See* Doc. #93, p. 3 n.3.

transform the drive into a purely personal matter, outside the scope of employment. Accordingly, none of the new facts identified by Clayton serve to resolve the issue of whether Dust was acting in the scope of employment at the time of the accident.

IT IS THEREFORE ORDERED that Clayton's Motion for Summary Judgment (Doc. #93) is DENIED.

IT IS FURTHER ORDERED that Clayton's Motion to Strike (Doc. #96) is GRANTED. Plaintiffs' Counter Motion for Partial Summary Judgment (Doc. #98) shall be stricken from the record.

IT IS SO ORDERED.

DATED this 15th day of September, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE